# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ASSOCIATED AUTOMOTIVE INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2374 |
| | § | |
| ACCEPTANCE INDEMNITY | § | |
| INSURANCE COMPANY, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are cross motions for summary judgment filed by Plaintiff and Defendant in this insurance-coverage dispute. Defendant Acceptance Indemnity Insurance Company ("Acceptance") filed a Motion for Summary judgment [Doc. # 12] ("Motion"). Plaintiff Associated Automotive, Inc. ("AAI") filed a Cross Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment [Doc. # 13] ("Cross Motion"). The motions are fully briefed and ripe for decision.[1] After carefully considering the parties' submissions, applicable legal authorities, and all pertinent matters of record, the Court **denies** Acceptance's Motion and **grants in part** and **denies in part** AAI's Cross Motion.

---

[1] Acceptance filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 14] ("Reply"). AAI filed a Sur-Reply to Defendant's Reply [Doc. # 15].

P:\ORDERS\11-2009\2374MSJ.wpd   100331.1245

## I.   FACTUAL BACKGROUND

This is the second lawsuit filed in this Court arising from a state court action filed against AAI by a worker injured on its premises in 2003.  The parties to the current litigation were previously before the Court in *Acceptance Indemnity Insurance Company v. Melvin Maltez, et al.,* Civil Action No. 4:04-2222 ("First Coverage Lawsuit"), a declaratory judgment action filed by Acceptance, an insurer, against, *inter alia*, AAI, its insured.[2]  The following factual background is not in dispute.

During the relevant time, AAI was a Houston corporation that performed a variety of services including selling, storing and repairing automobiles.  AAI was incorporated by Cal Enderli, Sr. in 1989.  Enderli, Sr.'s son, Cal Enderli, Jr., created another business in May 2003, AAI Automated Salvage ("Salvage"), which operated out of the same premises as AAI.  Salvage performed similar services to AAI, but was primarily engaged in the business of dismantling automobiles for parts.  AAI was insured by Acceptance.

Melvin Maltez was employed on the shared premises of AAI and Salvage.  In previous litigation, the parties disputed which entity actually employed him.  In August 2003, Maltez was injured on the job while dismantling an automobile with a

---

[2]    The factual background for this dispute is set forth in greater detail in the Court's Memorandum and Order of August 28, 2007, in the First Coverage Lawsuit [Doc. # 57], *see Acceptance Indem. Ins. Co. v. Maltez,* 617 F.Supp.2d 467 (S.D. Tex. 2007).

torch.  Maltez subsequently filed a lawsuit against AAI, Enderli, Sr., and Enderli, Jr. d/b/a Salvage, in state court in Harris County, Texas ("*Maltez* Lawsuit").[3]

On June 8, 2004, during the pendency of the state court action, Acceptance filed its declaratory judgment action in this Court seeking, *inter alia*, a declaration that it had no duty to defend or indemnify AAI with regard to the *Maltez* Lawsuit.  AAI filed its Original Answer on August 13, 2004, and subsequently, on December 20, 2004, filed an amended answer asserting counterclaims seeking declarations of coverage under the policy for the claims that were the subject of the *Maltez* Lawsuit.[4]  Holding that Maltez's claim was potentially within the scope of AAI's policy, the Court ordered Acceptance to provide a defense, and administratively closed the First Coverage Lawsuit pending the resolution of the underlying *Maltez* Lawsuit.

In November 20, 2006, the state court entered a jury verdict in Maltez's favor ("Maltez Judgment").  Specifically, the state court rendered a judgment against Enderli, Jr. d/b/a Salvage in the amount of $150,000 in compensatory damages as well as over $200,000 in pre- and post-judgment interest, costs and fees.[5]  The state court

---

[3]     The state court lawsuit is styled *Maltez v. AAI Automotive, Inc.*, *et al.*, No. 2004-01878, in the 80th Judicial District for Harris County, Texas.

[4]     *See* Original Answer to First Coverage Lawsuit, Exh. A to Cross Motion; First Amended Answer to First Coverage Lawsuit, *Acceptance Indem. Ins. Co. v. Melvin Maltez, et al.,* Civil Action No. 4:04-2222 [Doc. # 17].

[5]     *See* Judgment, Exh. C to Motion, at 1-2.

also entered judgment on the jury's verdict that Salvage and AAI formed a single business enterprise, and specified that AAI was jointly and severally liable for the entire judgment.[6]  The judgment against AAI was based solely on the single business enterprise theory.  Under Texas law, AAI had until December 20, 2006, to file an appeal of the state court's judgment.  *See* TEX. R. APP. P. 26.1 (notice of appeal must be filed within 30 days after the judgment is signed).

On December 1, 2006, midway through the 30 day appeal period, the Texas Supreme Court granted a petition for review in *SSP Partners v. Gladstrong Investments (USA) Corp.*  2006 Tex. LEXIS 1182 (Tex. Dec. 1, 2006).  On December 13, 2006, AAI requested that Acceptance file an appeal of the state court judgment on AAI's behalf, arguing that there was "legally insufficient evidence to support the joint enterprise finding."[7]  Acceptance, through its designated counsel, did not file an appeal, and the *Maltez* Judgment became final and binding on AAI on December 20, 2006.  *See* TEX. R. APP. P. 26.1; TEX. R. CIV. P. 329b.  Subsequently, on November 14, 2008, the Texas Supreme Court issued its opinion in *SSP Partners*, invalidating the single business enterprise theory of liability.  *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008).

---

[6]     *Id.*

[7]     Demand Letter, Exh. F to Cross Motion.  Apparently, AAI did not ask the carrier to challenge the legal viability of the single business enterprise doctrine *per se*.  *Id.*

Following the state court's judgment, and on Acceptance's motion, this Court lifted the stay and reactivated the First Coverage Lawsuit on January 26, 2007.  On February 16, 2007, the Court issued a revised docket control order that imposed a March 30, 2007, deadline for amendments to pleadings, "other than bad faith or extra-contractual claims."[8]  AAI did not amend its counter claims against Acceptance to add a claim for breach of contract based on Acceptance's failure to file an appeal of the *Maltez* Judgment.  After several motions and a jury verdict, the Court held in the First Coverage Lawsuit that AAI was not entitled to indemnity from Acceptance, and entered a corresponding Final Judgment.[9]

Following an unsuccessful appeal to the Fifth Circuit, AAI filed the instant lawsuit, raising, for the first time, a claim that Acceptance breached its insurance contract by failing to appeal the *Maltez* Judgment on AAI's behalf.  Acceptance counters that AAI's claim is barred by res judicata or waiver, and, in any event, Acceptance had no duty to appeal the state court judgment under Texas law.  The parties have cross-moved for summary judgment.

## II.  THE SUMMARY JUDGMENT STANDARD

---

[8]       *See* Docket Control Order, Exh. D to Motion.

[9]       *See* Final Judgment and Memorandum and Order of April 30, 2008, Exh. F to Motion.

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312

(5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or

"unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe.  *See Chaney v. Dreyfus Service Corp.*, ___ F.3d ___, 2010 WL 252126, at *4 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.  *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an

affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

"When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

Finally, when evaluating cross-motions for summary judgment, the "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998) ("WRIGHT")).  "But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  WRIGHT, § 2720.

## III.   ANALYSIS

### A.   Res Judicata

Acceptance first argues that AAI's claim for breach of contract is barred by the doctrine of res judicata. "Federal law determines the res judicata effect of a prior federal court judgment." *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994) (citing *Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992)). Under the doctrine of res judicata (or "claim preclusion"), "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *U.S. v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "The bar prevents relitigation of all 'issues that were or could have been raised in [the previous] action.'" *Id.* (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

For claim preclusion to apply, "the following four-part test must be satisfied: (1) the parties must be either identical or in privity; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have been concluded to a final judgment on the merits; and (4) the same claim or cause of action must have been involved in both actions." *Id.* (quotations and citations omitted). The parties do not dispute that the first three elements of the res judicata test are satisfied. Only the fourth element, whether the same claim or cause of action is involved in this action as was involved in the First Coverage Lawsuit is at issue here.

Application of the fourth element in this case turns on the scope of the compulsory counterclaim rule. *See Dillard v. Security Pacific Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988) (stating that whether a plaintiff investor's claims against defendant stockbrokers were barred by res judicata depended on whether the claims were required to have been asserted as compulsory counterclaims in a prior suit filed by the brokers against the investor). Federal Rule of Civil Procedure 13(a) designates as a compulsory counterclaim,

> any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

FED. R. CIV. P. 13(a).

Acceptance argues that AAI's claim for breach of the insurance contract based on Acceptance's refusal to appeal the *Maltez* Judgment arises from the same transaction that was the subject matter of First Coverage Lawsuit. Acceptance further contends that because AAI had the right to amend its pleadings until March 30, 2007, well after the *Maltez* Judgment became final and binding on December 20, 2007, it could have asserted the instant breach of contract claim in the First Coverage Lawsuit, and that this claim is therefore barred by res judicata.

AAI does not dispute that its instant breach of contract claim arises from the same transaction that was the subject matter of the First Coverage Lawsuit, and that it could have brought its failure-to-appeal claim in that suit.  Instead, AAI argues that claims that arise *after* the date of a party's answer in the original suit are not barred by res judicata in a later suit because a counterclaim acquired by a defendant after the defendant has answered is not considered compulsory, even if the claim arises out of the same transaction as does the plaintiff's claim in the original suit.  AAI relies on the Fifth Circuit's holding in *Dillard* for this proposition.

In *Dillard*, the Fifth Circuit addressed a dispute between a plaintiff investor, Dillard, and defendant stockbrokers.  Dillard sued the brokers on negligence and other theories for losses he claimed to have suffered when the brokers failed to execute his buy orders.  835 F.2d at 607.  In previous litigation, the brokers had sued Dillard for paying for his transactions with "hot checks."  *Id.*  Dillard filed an answer in the first suit, alleging negligence on the part of the brokers in failing to execute his orders.  *Id.* During the pendency of the first case, and after Dillard answered, the brokers successfully sought to have a criminal investigation commenced against Dillard for writing worthless checks.  *Id.*  The brokers moved to dismiss on res judicata grounds all of Dillard's claims in the second case, including, *inter alia*, claims based on the initiation of the criminal prosecution.  *Id.*

The Fifth Circuit stated that the question of whether the second suit involves the same cause of action as the first suit, and thus satisfied the fourth element of the res judicata test, depended in that case on the scope of the compulsory counterclaim rule. *Id.* at 609. The court held that there was an exception to the rule that a counterclaim that arises from the same transaction as the plaintiff's claim is compulsory: "a counterclaim acquired by a defendant *after* he has answered is not considered compulsory, even if it arises out of the same transaction as does plaintiff's claims." *Id.* (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER , FEDERAL PRACTICE & PROCEDURE: CIVIL § 1411, at 55 (1971)). The court noted that the "clear language" of Federal Rule of Procedure 13, limits the rule's ambit to claims the pleader possesses at the time of service. *Id.* The Fifth Circuit stated that "[c]ase authority for the exception is sparse, but uniform, and we adopt it for our Court." *Id.* Accordingly, while Dillard's claims based on the brokers' failure to execute his buy orders, which arose before the date of his answer in the first case, were barred by res judicata, Dillard's claims based on the criminal prosecution, which commenced after Dillard filed his answer, were not. *Id.*

Acceptance argues that *Dillard* should be limited to its "bizarre fact situation," *see id.* at 608, and the Court nevertheless should hold that AAI's breach of contract claim in this case is barred based on the public policies underlying the doctrine of res

judicata.[10]  The Court is not persuaded.  The *Dillard* court ruled specifically in the context of res judicata.  Acceptance cites no authority contrary to *Dillard's* clear pronouncement that a claim arising after a defendant filed its answer is not a compulsory counterclaim, even if it arises out of the same transaction as the plaintiff's claim.  Nor has the Court located any such authority.  In fact, the reported decisions from other circuits follow reasoning comparable to *Dillard*'s.  *See, e.g.*, *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529-30 (6th Cir. 2006) (claims arising after first filing are not subject to res judicata; "'an action need include only the portions of the claim due at the time of commencing the action,' because 'the opportunity to file a supplemental complaint is not an obligation.'") (quoting 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4409 (2d ed. 2002)); *Computer Associates v. Altai Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997) ("The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so." (internal citations omitted)); *Spiegel v. Continental Ill. Nat'l Bank*, 790 F.2d 638, 646 (7th Cir. 1986) (acts occurring after the

---

[10]      *See, Reply* at 2, 4-5.

filing of the first suit are not barred by res judicata in a second suit); *see also Russo v. Baxter Healthcare Corp.*, 919 F.Supp 565, 570 (D.R.I. 1996) (noting that "all the circuit courts that have confronted this issue have refused to apply a res judicata bar to claims arising after the original lawsuit was filed").

Because AAI's claim based on Acceptance's refusal to appeal the *Maltez* Judgment did not arise until after AAI had filed its answer in the First Coverage Lawsuit, this claim was not a compulsory counterclaim and is therefore not barred by the doctrine of res judicata.  Acceptance's Motion for Summary Judgment on this ground is denied.

### B.   <u>Waiver</u>

Acceptance next moves for summary judgment on the ground that AAI waived its failure-to-appeal claim by not raising it in the First Coverage Lawsuit when that suit was reopened after the *Maltez* Lawsuit's judgment was entered.  Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Addicks Svs., Inc. v. GGP-Bridgeland, LP,* ___ F.3d ___, 2010 WL 425054, at *9 (5th Cir. 2010).  "'While waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right.'"  *Id.* (quoting *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex.2005)).

As discussed above, AAI's failure-to-appeal claim was a permissive, not a compulsory, counterclaim in the First Coverage Lawsuit.  *See* Fed. R. Civ. P. 13(b) (a permissive counterclaim is a counterclaim that is not compulsory).  Consequently, AAI cannot be said to have intentionally relinquished its right to assert that claim by choosing not to raise it in the First Coverage Lawsuit as it was permitted to do under the Federal Rules of Civil Procedure.  Acceptance cites no authority for the proposition that a failure to raise a permissive counterclaim can waive such counterclaim.  Indeed, such a holding would eviscerate the permissive counterclaim rule.  Simply put, Acceptance has not produced any evidence that AAI engaged in conduct that was "unequivocally inconsistent" with asserting its right to bring the failure-to-appeal claim.  *See McCarty*, 165 S.W.3d at 353.[11]

### C.   <u>Merits Analysis</u>

The parties have cross-moved for summary judgment on AAI's breach of contract claim based on Acceptance's decision to not appeal the Maltez Judgment. The essential elements in a suit for breach of contract are (1) the existence of a valid

---

[11]   Acceptance also cites the Fifth Circuit's discussion in AAI's appeal of the First Coverage Lawsuit that AAI did not raise the failure-to-appeal claim in this Court in that suit, and also failed to raise that theory on appeal, and therefore waived it.  *See Acceptance Indem. Ins. Co. v. Maltez*, 2009 WL 2748201, at * 2 (5th Cir. 2009). However, the Fifth Circuit's discussion was limited to noting that AAI had waived the issue for that appeal, and is not relevant to the question of whether AAI has waived the failure to appeal claim more generally.  *See id.* (noting that the fact that AAI had addressed its failure to appeal theory in post-oral argument letter briefs did not  alter that issue being "waived for *this appeal*." (emphasis added)).

contract; (2) the plaintiff performed or  tendered performance; (3) the defendant

breached the contract; and (4) the plaintiff was damaged as a result of the breach.

*Scott v. Sebree,* 986 S.W.2d 364, 372 (Tex. App.—Austin 1998, pet. denied)*;*

*Hussong v. Schwan's Sales Enter., Inc*., 896 S.W.2d 320 (Tex. App.—Houston [1st

Dist.] 1995, no writ).  Acceptance argues that it did not breach the contract because

it had no duty to appeal the *Maltez* Judgment.  AAI counters that it is entitled to

summary judgment because it has established all four elements as a matter of law.

### 1.    Duty to Appeal

Under Texas law, an insurer's duty to defend an insured against third-party

claims is determined solely by the "four corners" of the factual allegations in the

underlying complaint and the "four corners" of the insurance policy.  *Northfield Ins.*

*Co. v. Loving Home Care*, 363 F.3d 523, 528 (5th Cir. 2004); *King v. Dallas Fire Ins.*

*Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Nat'l Union Fire Ins. Co. v. Merch. Fast Motor*

*Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  The Court is required to "resolve all

doubts regarding the duty to defend in favor of the duty" and to "construe the

pleadings liberally."  *Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex.

2008).  If the complaint in the underlying lawsuit clearly alleges only facts that would

exclude coverage under the insurance policy, there is no duty to defend.  *See*

*Northfield Ins. Co.*, 363 F.3d at 528 (citing *Fidelity & Guar. Ins. Underwriters, Inc.*

*v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).   If, however, it is unclear from the complaint in the underlying lawsuit whether the factual allegations fall within the policy's coverage, the "insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."   *See Zurich*, 268 S.W.3d at 491; *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).

Acceptance first argues that because the insurance policy in issue does not specifically contain any language that Acceptance must appeal a judgment against the insured, Acceptance had no duty to do so.[12]  In essence, Acceptance argues that under Texas law, an insurer has no duty *per se* to appeal an adverse judgment against its insured unless the insurance policy expressly provides otherwise.   Neither party located any Texas case law that addresses this issue.   Nor has the Court's own research revealed any dispositive such authority.[13]  Accordingly, as a federal court

---

[12]    The policy provides, as to the termination of the duty to defend, only that:

> Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance - "Garage operations" - Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.

Garage Coverage Form, Exh C. to Cross Motion, at 2.

[13]    The Court has located one case from the Fort Worth Court of Appeals that briefly addresses the termination of the duty to defend but provides little guidance.  In *Waffle House, Inc. v. Travelers Indem. Co. of Illinois,* 114 S.W.3d 601, 611 (Tex.App.—Fort (continued...)

sitting in diversity, the Court must make an "*Erie* guess"[14] as to how the Texas Supreme Court would decide the issue. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000); *United States v. Johnson*, 160 F.3d 1061, 1063 (5th Cir. 1998).

Acceptance's position that an insurer has no duty to defend an adverse judgment against its insured unless the insurance contract expressly requires an appeal is at odds with the general cannon of insurance contract construction that when the policy is capable of more than one interpretation, it must be construed in favor of the insured. *See, e.g.*, *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).  It is perhaps for this reason that courts in jurisdictions across the country have held that, absent an express provision in the policy to the contrary, an insurer's

---

[13]     (...continued)
Worth 2003,  pet. denied), the court mentioned circumstances when an insurer's duty to defend continues into the appellate process.  The insurance policy in issue provided that the duty to defend ended when the applicable policy limits were exhausted.  *Id.* The *Waffle House* court held that this was an unambiguous statement of the conditions that terminated the duty.  *Id.*  Therefore, the court concluded that the duty to defend in that case "continue[d] through the appellate process until the applicable limits of the policy are exhausted according to the terms of the policy."  *Id.*  Notably, the insurer merely argued that it had no duty to defend the relevant claims at all.  *Id.*  In this context, the Fort Worth Court of Appeals' two paragraph, ambiguous discussion of the duty to defend continuing through the "appellate process" until the limits of the policy were exhausted is not dispositive of whether insurers have a duty to appeal an adverse decision against their insured in Texas.

[14]     *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

duty to defend encompasses a duty to appeal an adverse judgment against the insured as long as there are reasonable grounds to believe that the insured's interest would be furthered by the appeal. *See, e.g., Chrestman v. U. S. Fidelity & Guar. Co.,* 511 F.2d 129, 130 (5th Cir. 1975) (Mississippi law) (stating that a plaintiff insured raising a duty to appeal claim against an insurer would have to show, at the very least, that there were reasonable grounds for the appeal); *Cathay Mortuary (Wah Sang) Inc. v. United Pacific Ins. Co.*, 582 F.Supp. 650, 657 (N.D. Cal. 1984) (California law) (recognizing "a general consensus that an insurer is obliged to pursue an appeal on behalf of its insured where there are reasonable grounds for appeal."); *MedMarc Cas. Ins. Co. v. Forest Healthcare, Inc.*, 199 S.W.3d 58, 62 (Ark. 2004) (citing ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 4:17 (4th ed. 2001) (stating that an insurer is obligated to appeal a judgment against its insured only when there are reasonable grounds to believe that insured's interest would be furthered by the appeal, and collecting cases)); *Sanchez ex rel. Sanchez v. Kirby*, 40 P.3d 1009, 1011-12 (N.M. Ct. App. 2001) ("The general rule appears to be that an insurer has a fiduciary duty to file and prosecute an appeal, absent a policy provision to the contrary, where there are reasonable grounds to believe substantial interests of the insured may be served or protected thereby.") (citing *Truck Ins. Exch. of Farmers Ins. Group v. Century Indem. Co.*, 887 P.2d 455, 459 (Wash. Ct. App. 1995)); *Davis v. Allstate Ins. Co.*, 747 N.E.2d

141, 146 (Mass. 2001) (recognizing the "established rule that an insurer's duty to defend generally encompasses an obligation to appeal from an adverse judgment against its insured, but only if reasonable grounds exist to believe that the insured's interest might be served by the appeal."); *Chatoney v. Safeay Ins. Co.*, 801 So.2d 448, 450-51 (La. Ct. App. 2001) ( "[An] insurer's obligation to defend includes the duty to appeal judgment adverse to the insured where there appears reasonable grounds for taking an appeal.") (quoting *Reichert v. Continental Ins. Co.*, 290 So.2d 730, 733 (La. Ct. App. 1974)); *Delmonte v. State Farm Fire and Cas. Co.*, 975 P.2d 1159, 1168-69 (Haw. 1999) (duty to defend includes duty to appeal where there are reasonable grounds for the appeal unless the insurance contract expressly provides to the contrary); *Ursprung v. Safeco Ins. Co. of Am.*, 497 S.W.2d 726, 730-31 (Ky. 1973) ("After reviewing the rules of other jurisdictions, we have concluded that the contractual obligation to defend carries with it an obligation to prosecute an appeal from a judgment against an insured where there are reasonable grounds for appeal.") (citing, *e.g.*, *Kaste v. Hartford Accident & Indem. Co.*, 170 N.Y.S.2d 614 (NY. App. Div.1958)).

Though not directly on point, a recent Fifth Circuit decision, interpreting Texas law, reached a result similar to that in the foregoing authorities. *See Gibbons-Markey v. Texas Med. Liab. Trust*, 163 F. App'x 342, 346 (5th Cir. 2006). In *Gibbons-*

*Markey*, the court rejected an insurer's argument that it had no duty to seek a bill of review of a defective-service default judgment rendered against its insured when the judgment became final prior to the insurer receiving notice of the suit.  *Id.*  The court reasoned that though the language in an insurance policy requiring an insurer to "defend any lawsuit" against the insured did not explicitly require an insurer to seek post-judgment relief, "it is illogical to suppose that the word 'defense' relates only to trial of the action and does not embrace such relief."  *Id.*  The Fifth Circuit cited an insurance treatise for the proposition that, "by that reasoning, an appeal is likewise not a 'defense' by definition but is nonetheless, in some circumstances, encompassed within an insurer's duty to defend."  *Id.* (citing ERIC M. HOLMES, HOLMES' APPLEMAN ON INSURANCE § 136.11 (2d ed. 2003)).

The Court finds the reasoning of *Gibbons-Markey* and the above-cited authorities persuasive.  The Court holds that the Texas courts would likely interpret Texas law to be that, in the absence of an express insurance policy provision to the contrary, an insurer's duty to defend includes a duty to appeal an adverse judgment against its insured if there are reasonable grounds for the appeal.

There are a few courts that have applied different tests for determining whether an insurer has a duty to appeal.  The Michigan Court of Appeals held that, under a broad duty to defend clause, an insurer is obligated to proceed with an appeal if

requested by the insured regardless of whether the insurer believes there are reasonable grounds for an appeal. *Palmer v. Pacific Indem. Co.*, 254 N.W.2d 52, 55 (Mich. Ct. App. 1977). Other courts have held that an insurer will be liable for failing to appeal a judgment against the insured in excess of policy limits only if such a decision would be a breach of the insurer's duty of good faith and fair dealing. *See Hawkeye-Security Ins. Co. v. Indemnity Ins. Co. of North America,* 260 F.2d 361, 363–64 (10th Cir. 1958) (Colorado law); *Guarantee Abstract and Title Co., Inc. v. Interstate Fire and Cas. Co., Inc*., 618 P.2d 1195, 1200 (Kan. 1980). It is not clear that this good faith standard differs from the "reasonable grounds standard" enunciated above. *See* ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 4:17 (4th ed. 2001) ("The good faith test, however, should amount to the same thing as the reasonable grounds test; if there are reasonable grounds for prosecuting an appeal, but the insurer fails to finance one, it will have acted unreasonably, sacrificed the insured's interests in favor of its own, and, therefore, breached its duty of good faith and fair dealing.").

In any event, it appears that the majority rule is that an insurer has a duty to appeal an adverse judgment against an insured, in the absence of an express policy provision to the contrary, where there are reasonable grounds for appeal. The Court finds this formulation to strike the best balance between the competing interests

implicated by a decision to lodge or forego an appeal of an adverse judgment, and predicts that the Texas Supreme Court would adopt it.

### 2.   **Reasonable Grounds for Appeal**

Acceptance next argues that even if the duty to appeal does exist under some circumstances, Acceptance had no such duty in this case because there were no reasonable grounds for appeal.  Acceptance cites to opinions of numerous Texas courts of appeals that recognize or note, in some fashion, the existence of the single business enterprise theory, and argues that it "could not have looked into the future" to predict that the Texas Supreme Court would disapprove the theory.[15]  Acceptance is correct that, by November 2006, the time the *Maltez* Judgment was entered, numerous Texas courts of appeals had applied, or at least acknowledged the existence of, the single business enterprise theory.  *See, e.g.*,  *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 196 n.9 (Tex.App.—Houston [14th Dist] 2005, no pet.) ("A number of this state's appellate courts have recognized the theory as a means of disregarding corporate forms, including this court.") (citing *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 120-21 (Tex.App.—Beaumont 2001, pet. denied); *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *Allright Tex., Inc. v. Simons*, 501 S.W.2d 145, 150

---

[15]     *See* Reply, at 10-11 (collecting cases).

(Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.), and *Murphy Bros. Chevrolet v. E. Oakland Auto Auction*, 437 S.W.2d 272, 275-76 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.)); *Nat' lPlan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718, 744 (Tex.App.—Austin 2004), pet. filed) (recognizing the single business enterprise theory as a valid means of piercing the corporate veil and noting that "within the past five years three of our sister courts have recognized" the theory) (citing *In re U-Haul Int'l*, 87 S.W.3d 653, 657 (Tex.App.—San Antonio 2002, no pet.); *Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex.App.—Texarkana 2000, no pet.); *Hall v. Timmons*, 987 S.W.2d 248, 255-56 (Tex.App.—Beaumont 1999, no pet.)).   Indeed, as the Texas Supreme Court noted in *SSP Partners*, it was an opinion of the Houston Court of Appeals, the relevant jurisdiction for an appeal of the *Maltez* Judgment, that initially articulated the doctrine.  *See SSP Partners*, 275 S.W.3d at 450 (citing *Paramount* 712 S.W.2d at 536).  The *Paramount* court described the single business enterprise theory: "when corporations are not operated as separate entities but rather integrate their resources to achieve a common purpose, each constituent corporation may be held liable for debts incurred in pursuit of that purpose."  *Paramount*, 712 S.W.2d at 536.

While it is true that numerous courts of appeals had, in some fashion, recognized or noted the existence of the single business enterprise theory by the time

of the *Maltez* Judgment, the Texas Supreme Court had not endorsed the rule as a viable theory of liability.  In fact, the Supreme Court expressly reserved the question of "whether a theory of 'single business enterprise' is a necessary *addition* to Texas law."  *See So. Union Co. v. City of Edinburgh*, 129 S.W.3d 74, 87 (Tex. 2003) (emphasis added); *see also SSP Partners*, 275 S.W.3d at 452 (noting that the Texas Supreme Court had never approved of the single business enterprise theory).  The courts of appeals, including the Houston Court of Appeals, acknowledged the Texas Supreme Court's warnings about the viability of the theory and its resulting uncertain status.  The *Wortham* court, for example, held that a plaintiff could not rely on the theory because the plaintiff had failed to raise it in the trial court, and stated that "*[a]ssuming Texas law recognizes the single business enterprise theory* as a basis for disregarding the corporate fiction, it was appellants' burden to plead and prove the theory."  *Wortham*, 179 S.W.3d at 196 (emphasis added); *see also, e.g.*, *Nat'l Plan Adm'rs*, 150 S.W.3d at 744 ("The supreme court has not spoken on the issue of the viability of the single-business-enterprise theory.") (citing *Edinburgh*, 129 S.W.3d at 87); *Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688, 694 (Tex.App.—Beaumont 2005, no pet.) ("the Supreme Court has thus far reserved ruling on the issue.").  Thus, at the time of the *Maltez* Judgment, the continued viability of the single business enterprise theory of liability was not certain.

In this context the Supreme Court granted the petition for review in *SSP Partners* on December 1, 2006.  AAI sent its letter requesting an appeal on December 13, 2006.  On the one hand, it is significant that the deadline to file an appeal did not expire until December 20, 2006—a week after AAI requested the appeal.  On the other hand, it must be noted that the underlying court of appeals' decision in *SSP Partners* did not address the general viability of the single business enterprise theory so as to provide clear and express notice that the Supreme Court would reach the issue.  *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 169 S.W.3d 27, 44 (Tex.App.—Corpus Christi 2005) (declining to extend the doctrine to a party's vicarious liability for the wrongful acts of a non-party).  Nor did the opinion granting the petition provide any details.  *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 2006 Tex. LEXIS 1182 (Tex. Dec. 1, 2006).

The Court accordingly holds that there is a genuine issue of material fact whether there were reasonable grounds for Acceptance to appeal the *Maltez* Judgment.  Neither party is entitled to judgment as a matter of law on this issue, and the cross motions for summary judgment are accordingly denied.

## IV.   <u>CONCLUSION</u>

The Court holds that AAI's failure-to-appeal breach of contract claim is not barred by res judicata or waiver because it was a permissive counterclaim in the First

Coverage Lawsuit.  Acceptance's Motion is therefore denied on this ground, and AAI's cross motion is granted to this extent.  Further, making an *Erie* guess, the Court holds that there is no *per se* rule that an insurer's duty to defend does not encompass a duty to appeal an adverse judgment against the insured.  Rather, in the absence of a policy provision to the contrary, an insurer does have the duty to appeal where there are reasonable grounds for the appeal.  Finally, there is a genuine issue of material fact as to whether reasonable grounds existed for Acceptance to appeal the *Maltez* Judgment on AAI's behalf.  Consequently both parties' motions for summary judgment on this point are denied.  It is therefore

   **ORDERED** that Acceptance's Motion for Summary Judgment [Doc. # 12] is **DENIED.**  It is further

   **ORDERED** that AAI's Cross Motion for Summary Judgment [Doc. # 13] is **GRANTED IN PART** and **DENIED IN PART.**

   SIGNED at Houston, Texas, this 31st day of **March, 2010**.

Nancy F. Atlas
United States District Judge